RECEIPT # _____
AMOUNT: $402.00
APR 2 0 2021
CASHIER'S SIGNATURE

UNITED STATES DISTRICT COURT

DISTRICT OF PUERTO RICO

Dr. Luis S. Arana Santiago

    Plaintiff

Civil No. 21-cv-1172(FAB)

VS.

The University of Puerto Rico;

Dr. Luis Tapia Maldonado, in his official capacity as

rector of the University of Puerto Rico in Utuado;

Dr. Jorge Haddock Acevedo, in his official capacity

as President of the University of Puerto Rico

    Defendants

2021 APR 20 AM 11: 15
U.S. DISTRICT COURT
SAN JUAN PR

**COMPLAINT**

TO THE HONOURABLE COURT:

Plaintiff, Luis S. Arana Santiago, litigating pro se, hereby alleges upon information and belief as follows:

## I. STATEMENT OF THE CASE

1. The present case has setting at the University of Puerto Rico in Utuado (UPRU), and is about a complaint of sexual harassment to a student by the plaintiff. On November

22, 2016, former rector of UPRU, Dr. Raquel Vargas Gómez, temporarily suspended the Plaintiff for a period of six (6) months that started on **December 23, 2016** for allegedly having violated UPRU's policy on sexual harassment, and for allegedly having violated the university policy of acceptable use of the University of Puerto Rico resources of the technology of information[1] ("Resolution").

## II. JURISDICTION

2. This Court has jurisdiction to hear this case under Article III of the United State Constitution[2], and also under 28 USC §1331[3] and 1343 (a)(4)[4]. This court have **personal jurisdiction** over defendants pursuant to Rule 4-k of Federal Rules of Civil procedure and Rule 3.1(a)(1) of Puerto Rico Civil Procedure Rules.

3. Venue is appropriate in the Court pursuant to 28 USC §1391, as this action is brought in the judicial district in which the unlawful actions against Plaintiff occurred.

## III. THE PARTIES

4. The Plaintiff, **Dr. Luis S. Arana Santiago**, is a tenured professor at the University of Puerto Rico in Utuado with permanent status. His postal address is P.O. Box 500, Orocovis, PR, 00720. His email address is arana2121@yahoo.com.

---

[1] This second charge is a consequence of the sexual harassment charge for having used the university email account to allegedly sexually harass a student. Consequently, once it is proven that the charge of sexual harassment cannot be sustained; the related charge of acceptable use of technology resources cannot be sustained as well in consequence.

[2] U.S. Constitution, Art. III, §2, cl. 1, in pertinent part, states: " The Judicial Power shall extend to all Cases, in law and Equity, arising under this Constitution, the Laws of the United States..."

[3] Because this case arises under the United States Constitution.

[4] Title 28 U.S.C. § 1343 (a) states: the district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

5. Defendant, **The University of Puerto Rico (UPR)** is the main public university system in the U.S. Commonwealth of Puerto Rico. It is a government-owned corporation with 11 campuses and approximately 58,000 students and 5,300 faculty members. Its current President is **Dr. Jorge Haddock Acevedo**, whose address is: Universidad de Puerto Rico, Administración Central, Oficina del Presidente, Jardín Botánico Sur, 1187 Calle Flamboyán, Río Piedras, PR; his postal address is P.O. Box 23400, San Juan, PR, 00931-3400, and his email address is: jorge.haddock@upr.edu.

6. Defendant, **Dr. Luis Maldonado Tapia**, is the current rector of the University of Puerto Rico in Utuado. His postal address is Universidad de Puerto Rico en Utuado, rectoría, P.O. Box 2500, Utuado, PR 00641 and his email address is: luis.tapia@upr.edu.

## IV. THE FACTS

7. The incidents that led to the Administrative Complaint happened during the academic year 2014-2015.

8. The student Naomi Marrero Fuentes ("student") was Plaintiff's student in both semesters of the academic year 2014-2015. In the first semester the student obtained a final grade of C and the second semester she obtained a final grade of F.

9. In the first semester the student made the Plaintiff aware that she was considering dropping from the university because she did not like it and because she lacked motivation.

10. The Plaintiff told her that he was in the same situation as she was in his first year at the university. However, the Plaintiff mentioned that he had a visit with an academic counselor at the university who encouraged him not to drop out from the university and offered him some suggestions.

3

11. The Plaintiff told the student that after the meeting with the academic counselor, he had decided to finish a bachelor's degree, and thereafter the Plaintiff decided to start a master degree, and eventually he finished a Ph.D., and became a university professor.

12. Plaintiff's anecdote caught the student's attention and interest. The Plaintiff counseled her not to drop from the university and suggested that she should have a visit with an academic counselor to discuss her situation to find out what academic options were available for her.

13. Thereafter, the student started to show some motivation for Plaintiff's class. However, the student reaffirmed to the Plaintiff that her motivation to continue in the university 'was not all there'.

14. At the end of the second semester, the student sent the Plaintiff an email thanking him for the counseling he had given her throughout the academic year, and also praised the Plaintiff as being a good person and an excellent teacher.

15. In the fall of 2015, the Plaintiff realized that the student had not enrolled on his course, and worried that the student had decided not to continue in the university[5]. Consequently, he wrote the student an email asking about it. The student did not reply to that email, and the Plaintiff thought that indeed she had dropped from the university, and in that event her university email account was closed.

16. Later on, the plaintiff ran into her in the hallway. She greeted the Plaintiff with enthusiasm. That baffled the Plaintiff. The Plaintiff told the student that he had sent her an email because he had thought she had dropped out from the university, but she did not reply

---

[5] In that semester, the Plaintiff was the only Professor that was teaching the course that the student had failed in the previous semester.

4

to it. The student immediately told the Plaintiff that she had not received an email from him. The Plaintiff told the student that he wouldn't be sending her more emails if that were bothering her. The student told the Plaintiff that it was not bothering her at all, and encouraged him to keep sending emails to her. She said that she did not understand why she did not receive Plaintiff's email.

17. About two months later the Plaintiff sent another email to her, followed by another one, two weeks thereafter. The student did not reply to those emails either. Sometime later the Plaintiff ran into her again in the hallway of the university, and the student greeted the Plaintiff with utmost enthusiasm. The Plaintiff pointed out that she did not answer his emails again, and she said that "there must be some kind of problems with her email account", because not only was she not receiving Plaintiff's emails, but "all my friends are mad at me" for not answering their emails. She said that she needed to straighten out the situation of not receiving the emails with university personnel. The Plaintiff trusted her because she did not show any signs that would indicate that she did not like to be Plaintiff's acquaintance anymore or that his emails were bothering her. Actually, she was acting like the situation of not receiving the emails was real and that it had finally "gotten to her nerve".

18. On January 15, 2016, the Plaintiff wrote his last email to the student. When she did not reply to it, the Plaintiff **finally** started distrusting her. As the Plaintiff later realized, the student had been lying to him all along about not receiving his emails.

19. On **February 25, 2016**, the Dean of Students, Mrs. Ana Arce Vélez, notified the Plaintiff that a complaint about sexual harassment had been presented against him, but she did not reveal the identity, the gender, or the allegations of the complainant person.

5

20. On **March 2, 2016**, there was another meeting in which Mrs. Ana Arce Vélez informed the Plaintiff that the complainant was a student without revealing the gender. In that meeting, she would use he/she when referencing the student, to mask the gender of the complainant student. Nor had she revealed the student allegations in that meeting.

21. In spite of not having informed the Plaintiff of the identity of his accuser or gender in the meeting of **February 25, 2016,** and not having told him about the allegations of the complainant student, Mrs. Ana Arce Vélez mentioned in the minutes of the meeting of **March 2, 2016** that the Plaintiff did not come with counsel, and that he did not bring an affidavit.

22. Also, in the meeting of **March 2, 2016**, Mrs. Ana Arce Vélez mentioned that the meeting was in part for the Plaintiff to present his defense, even though she had not informed the Plaintiff about the student allegations or gender. *Minutes of the reunion of March 2, 2016.* Ironically, she added that by giving the Plaintiff the opportunity to defend himself in that meeting, they were complying with Certification 130. She mentioned that their interest was to follow Certification 130 regulations; then she ordered the Plaintiff to **not get close to any student**. By doing so, Mrs. Ana Arce Vélez misconstrued Part G, Article IX of Certification 130, which clearly states that any provisional measures should be directed only to protect the complainant person.

23. On **July 13, 2016,** Mr. Carlos Igartua Veray, who represented UPRU in the Formal Procedure of the investigation, sent the Plaintiff the documental evidence that UPRU was going to present against the Plaintiff at the hearing; finally, at that time, the Plaintiff became aware of the student allegations, after almost five (5) months had passed since the

6

investigation began. That was an extremely long time for the Plaintiff to have been wondering about what could have been the student's allegations.

24. Not having informed the Plaintiff about the student's allegations during the Informal Procedure of the investigation encompassed **three violations** to Certification 130, namely, two violations of Part I, Article IX of Certification 130 and a violation to **Part H**, Article XI of Certification 130. **Firstly, Part I**, Article IX of Certification 130 requires that the person against whom the complaint of sexual harassment is filed has to be informed about the allegations against him/her made by his/her accuser. **Secondly**, because the Plaintiff was not informed about the student's allegations made against him by the student, he was *de facto* incapable of defending himself about the student's allegations, and Part I, Article IX of Certification 130, guarantees such an opportunity. **Thirdly**, not having informed the Plaintiff about the student's allegations also implies a violation of **Part H**, Article XI of Certification 130, which requires an affidavit from the parties as part of the investigation. This was so, because the Plaintiff could not have presented an affidavit during the Informal Procedure of the investigation, had he wanted to do so, because he did not know about the student allegations. Not having informed the Plaintiff about the student's allegations was also a violation of **Section 35.1.5** of the General Regulations of the University of Puerto Rico, because **it precludeded** any opportunity for the Plaintiff to present any mitigating evidence.

25. On **March 28, 2016**, the ex-rector of the University of Puerto Rico in Utuado, Dr. Raquel Vargas Gómez ("ex-rector"), issued an Administrative Complaint of sexual harassment of the Plaintiff based on the Informal Procedure of the investigation report. Immediately, the ex-rector concluded that the Plaintiff was guilty of sexual harassment, even though she had not seen the evidence that the Plaintiff would be presenting at the hearing. *Dr. Raquel*

*Vargas Gómez, Querella Administrativa Disciplinaria, #2, 28 de marzo de 2016*. Moreover, the ex-rector accused the Plaintiff of three charges that had to do with the Quid Pro Quo modality of sexual harassment, namely, violations to Sections A-1, A-2 and B-1 of Article VIII of Certification 130, in spite of not a trace of evidence in the record to support such a finding. Besides being a violation of due process of law to the Plaintiff, this conduct of the ex-rector was also a violation to Section B-2, Article XI, of Certification 130.

### The Bias of the Examining Officer

26. The Examining Officer assigned to the case was attorney Luis Sevillano Sánchez ("Examining Officer"). After reading his Report, his bias and prejudice favoring UPRU's position that the Plaintiff was guilty of sexual harassment to the student was evident.

27. Notwithstanding that the evidence in this case clearly reveals the mendacity of the student concerning her allegations, the Examining Officer chose to believe her over the Plaintiff. It was particularly amazing that the Examining Officer believed the student when she said that one time the Plaintiff abruptly stopped the class and invited her and a friend to drink a beer and study at a nearby bar. The student told two different versions of that alleged incident, both which includes drinking beers.

> **First version**: The student alleged that the professor invited her to **eat pizza** and drink a beer. *Informal Procedure Report by Mrs. Ana Arce Vélez, March 7, 2016, page 2* [50-bullet 4][6].
>
> **Second version**: During **one** pre-calculus II class, Prof. Arana Santiago invited the student Patricia Nicole Puchales Santana and me **to study** and drink a beer at Hery's Bar. *Naomi I. Marrero Fuentes, Affidavit, #8, February 24, 2016* [53-bullet 8].

---

[6] Page numbers refer to the Appendix that is included in "Motion in Request for Injunctive Relief", April 20, 2021.

28. The truth is that the plaintiff has not consumed alcohol since 1997. It is material to let this Honorable Court know that Mr. Heriberto Rivera Soto, who was the Owner of the bar that the student mentioned that the Plaintiff had invited her and a friend to, was going to testify at the hearing on Plaintiff's behalf. His testimony would have been that the Plaintiff **had never** visited his bar.

29. However, the hearing was canceled the day Mr. Heriberto Rivera Soto was scheduled to testify. Thereafter, Plaintiff's legal counsel, Mrs. Michelle Garcia Busquets, withdrew from the case. Plaintiff's new legal counsel, Mrs. Teric Brito, asked the Examining Officer whether it was necessary to call back Mr. Heriberto Rivera Soto to testify, but the Examining Officer told her that **it was unnecessary**. The Plaintiff and his counsel understood that the Examining Officer had realized that to go to a bar to study <u>**just did not make any sense at all**</u> (the "drink a beer and study" version of the incident was the one that the Examining Officer chose to believe).

30. As it happened, the Plaintiff and his counsel were in shock when they realized that the Examining Officer had believed the student's allegation about the bar invitation, because it was included in his report as a **proven fact**. *Examining Officer Report, page 33, #29, October 23, 2016* [33-#29].

31. The Examining Officer explained in his report why one of UPRU's witnesses, Professor Caroline Mercado Rosado, could not come to testify at the hearing. *Examining Officer Report, page 7, October 23, 2016* [27-second paragraph]. <u>However, the Examining Officer did not explain in his report why Mr. Heriberto Rivera Soto, who was Plaintiff's only witness, did not come to testify</u>. This conduct of the Examining Officer in regard to Plaintiff's only witness was highly suspicious.

32. As the Plaintiff recalls it, at the hearing, Mrs. Ana Arce Vélez **admitted** that she had put the plaintiff at a **disadvantage** by not informing him about the student's allegations during the Informal Procedure of the investigation. In any case, the following is a translation from a couple of excerpts taken from the minutes of the reunion of March 7, 2017, that the Plaintiff had with Mrs. Ana Arce Vélez, et al., that support both that the Plaintiff did not know about what the student allegations were, and that Mrs. Ana Arce Vélez did not inform the Plaintiff about the student's allegations during the Informal Procedure of the investigation:

> We instructed Dr. Arana Santiago that he could present an affidavit in order to state his position. Dr. Arana Santiago indicates that since this is a case where **he does not know the charges against him**[7], there is no legal counsel accompanying him. *Minutes of reunion of March 7, 2016. (Emphasis provided.)*

> Dr. Arana Santiago requests a copy of the student's allegations that contains her signature to ensure its validity. Professor Arce Vélez clarifies that at this point in the process **no copies** are included because this is how it is certified. *Minutes of the reunion of March 7, 2016 the Plaintiff had with Mrs. Ana Arce Vélez, et al., page 2, paragraph #5.*

33. Despite what Mrs. Ana Arce Vélez expressed in the minutes of the reunion of March 7, 2016, and the fact that the evidence in the record clearly shows that Mrs. Ana Arce Vélez had not informed the Plaintiff about the student's allegations during the Informal Procedure[8] of the investigation, the Examining Officer expressed in his report that he believed that the Plaintiff was informed about the student allegations during the Informal Procedure of the investigation. Specifically, he said:

---

[7] The Plaintiff meant the student allegations.
[8] The report of the Informal Procedure of the investigation by Mrs. Ana Arce Vélez is dated March 7, 2017.

> We understand that, during the course of the informal proceeding, the Respondent was notified of the allegations against him and about the person who had filed the complaint. *Examining Officer Report, October 23, 2016, page 22.*

34. Not telling someone about the allegations against him/her in an investigation goes against one of the basic principles of an investigation, against Certification 130, and against the due process of law. However, the Examining Officer decided to fix that fatal deficiency in his report, and changed Mrs. Ana Arce Vélez's account for his. Also, the Examining Officer stated in his Report:

> [...] we can not share his position [meaning Plaintiff's position] that he thought that there was a friendship relationship between him and the student and that it could extend beyond the classroom.

35. This comment by the Examining Officer could be understood as if he disapproves that there can be a friendship relationship between a professor and a student, much less that it could be extended beyond the classroom. Because the case had to do with that kind of situation, he should have **disqualified himself** from the case due to his bias. His remark clearly shows that he could not have been an **impartial arbiter** in the case, even before the Formal Procedure started.

36. The Examining Officer further said:

> [...] we are concerned that the Defendant did not recognize the seriousness of his acts, which shows little judgment, failure to properly weigh the consequences of his own actions and scant moral and

11

academic convictions[9]. *Examining Officer report, October 23, 2016, third paragraph, page 24.*

37. By making that comment, the Examining Officer went beyond his duty as Examining Officer in the case, and took the opportunity to insult the Plaintiff because of his bias of disapproving student-professor relationships that we have explained previously.

38. The foregoing discussion clearly shows that the Examining Officer was extremely **biased and prejudiced** about the outcome of the case. His partiality favoring UPRU's position was clear and overwhelming. Put in constitutional language, the Plaintiff participated in an administrative proceeding at UPRU where the Examining Officer **was prejudiced and biased**, in **violation** of Plaintiff's right to an impartial adjudicator as guaranteed by the due process.

39. The Examining Officer established in his report that a large part of the constituent elements of the acts of sexual harassment [by the Plaintiff] are contained in the facts stipulated by the parties. Here is a list of them:

- That the University of Puerto Rico at Utuado is an Educational Institution. *Examining Officer Report,#1, page 10*

- That the defendant is a Professor at the University of Puerto Rico in Utuado; *Examining Officer Report,#2, page 10*

- That the young Naomi Marrero Fuentes was a student of the Defendant at the University of Puerto Rico in Utuado, for one (1) year; *Examining Officer Report,#6, page 10*

---

[9] The Examining Officer had made that comment in spite of the fact that the complainant student obtained an **F** in the course she took from the Plaintiff in the second semester. She received the grade she worked for, **despite any acquaintance she had with the Plaintiff**.

- That the young Naomi Marrero Fuentes took the MATE 3171 AND MATE 3172 courses with the Plaintiff, in two (2) consecutive semesters, for the academic year 2014-2015; *Examining Officer Report,#7, page10*

- That the Counselor Caroline Mercado Rosado was the person who received the notification from the young Naomi Marrero Fuentes regarding her complaint related to the Defendant; *Examining Officer Report, #8, page 10.*

- That the Counselor Caroline Mercado Rosado, once she obtained the information provided by the young Naomi Marrero Fuentes, referred the matter to the Dean of Academic Affairs2; *Examining Officer Report, #9, page 10.*

- That the Plaintiff used his personal email and institutional email to communicate with the young Naomi Marrero Fuentes; *Examining Officer Report,#16, page 10*

- That in one of the emails that the Plaintiff sent to the young Naomi Marrero Fuentes, he mentioned a romantic dream he had and that, in another email, he made comments about her weight. *Hearing Officer Report,#20, page 12*

- That even after completing the courses taken, the Plaintiff continued to send emails to the young Naomi Marrero Fuentes; *Examining Officer Report,#25, page 13*

- That the young Patricia Puchales Santana was a student of the Defendant in at least one (1) year, together with the young Naomi Marrero Fuentes; *Examining Officer Report,#27, page 13*

- That on at least two (2) occasions, the Plaintiff asked the student Patricia Puchales Santana about the young Naomi Marrero Fuentes; *Examining Officer Report,#35, page 14.*

40. It is Plaintiff's position that there is not any conduct of sexual character contained in the list of stipulated facts by the parties, much less is there any conduct contained on that list that is **severe**.

41. The student sent the following emails to the Plaintiff during the time she was Plaintiff's student or shortly after she was not his student anymore: [ see 139-141]

- **December 9, 2014**: I will study with Cristian tomorrow at the uni [meaning university] and I expect to see you there.

- **December 12, 2014**: Thank you Professor, and it was a pleasure to take [have taken] this course from you. I wish you a happy and merry Christmas. I was talking to Astrid and I wonder if you will send [us] the final grade or how will you do it?

- **February 4, 2015**: Hello, Professor Arana I have a laboratory on Tuesdays and Thursdays from 1:00 to 3:50 and then your class. I apologize for being late, I have a problem with sugar, I am hypoglycemic and I went to buy something at the cafeteria before the class.

- **March 13, 2015**: Greetings Professor Luis Arana:
  I am writing to see when I can come by your office. I would like to know my exam grade since I know that I did not obtain a good grade [, and] I would like to talk to you about some concerns and about the next exam.

- **April 2, 2015**: Greetings Professor, I am writing to you because I have a concern regarding the work [that has] to be turned in. I entered the page, I can not find it. How does the assignment say? And when is it due? Thank you very much and excuse me. Have a beautiful week and Happy Easter.

- **May 17, 2015**: Thank you very much Professor, I still do not know what to do, I am not very happy with my performance in your class, I did not put enough enthusiasm on it.

- **May 23, 2015**: Professor I have a [question], since **I feel confident with you**. The fact that I did not pass your class worries me, obviously my average drops, I do not know how much an F affects me. I am honestly going through a process whereby I do not feel good about what I am studying, I do not feel that I fit into this. This does not justify my grade but I realize that I am not giving the necessary enthusiasm to my classes. I want to thank you for always caring, helping and advising me. I recognize that you are an excellent teacher and person. It was a pleasure taking class with you. att Naomi De Corozal (*Emphasis provided*.)

42. These emails, in which the student thanked, greeted and expressed admiration for the Plaintiff, are in **fatal conflict** with what she had stated in her affidavit, and with what she told the university officials during the investigation. In her affidavit she expressed:

- Although I felt uncomfortable with his behavior, <u>**I avoided any kind of approach to Professor Arana**</u> and tried to be accompanied when I needed to meet with him during his office hours. *Naomi Marrero Fuentes, Affidavit, February 24, 2021* [53, #5].

In the Informal Procedure of the investigation, she told the university officials:

- That the situation became **so uncomfortable** that "I decided not to ask him more", this referring to the doubts during the Pre-Calculus course that the student took from the Plaintiff. *Informal Procedure Report, Mrs. Ana Arce Vélez, page 2, #6* [50].

15

- That "she preferred not to go to class" and she told her friend that **she did not feel comfortable in the classroom.** *Informal Procedure Report, Mrs. Ana Arce Vélez, page 2, #7* [51].

- That on one occasion, the professor greeted her with a kiss despite the fact that the complainant [student] had **not given him confidence**[10] or had allowed it. *Informal Procedure Report, Mrs. Ana Arce Vélez, page 2, #10* [51].

43. It is Plaintiff's position that the University Officials should have started a disciplinary proceeding against the student for having lied to them, but they were so **biased** to attach responsibility to the Plaintiff that they did not realize that she had lied to them. The Examining Officer himself believed the student when she alleged that she was feeling so uncomfortable by Plaintiff's behavior that she sought company when she needed to meet Plaintiff in his office. *Mr. Luis Sevillano Sánchez, Proven fact #31, October 23, 2016* [33].

## Legal Framework and Support

### The standard for a sexual harassment complaint

44. The standard for the investigation of a sexual harassment complaint has been invariably established by the Office of Civil Rights of the Federal Department of Education (OCR), the United States Equal Employment Opportunity Commission (EEOC), the U.S. Supreme Court[11] and The Supreme Court of Puerto Rico[12]. In the case that the harassment is not based

---

[10] This comment is fatally in conflict with what she had said in the email she sent the Plaintiff on May 23, 2015, on the list of emails above: Professor I have a [question], since **I feel confident with you...**

[11] Davis v. Monroe County Board of Education, 526 U.S. 629,633 (1999); Gebser v. Lago Vista Independent School District, 524 U.S. 274 (1998).

in sexual orientation or gender, the obvious requirement for hostile environment sexual harassment is that the alleged conduct has to be sexual in nature. In the present case, the UPRU's Administrative Complaint fails the **first** and basic requirement, as the conduct of the Plaintiff alleged by the student is **not of sexual nature**. **Secondly**, the conduct must be **severe** to create a hostile environment. In the Administrative Complaint, there is not any severe conduct alleged by the student, be it sexual or otherwise. Consequently, UPRU's Administrative Complaint does not comply with this second requirement. **Thirdly**, the conduct has to be analyzed from an **objective** and **subjective** point of view to see if the conduct is capable of creating a hostile environment to the student. In the case José Lorenzo Hernández v. University of Puerto Rico in Aguadilla, 2012 TSPR 57, the Supreme Court of Puerto Rico established that it needed to be analyzed whether the student had felt intimidated or threatened by the alleged harasser's conduct; whether the conduct interferes unreasonably with the student's performance at the school, or whether it creates a hostile environment. The student never claimed that Plaintiff's conduct interfered with her academic progress. Also, the evidence in the record would not objectively support that the student had felt intimidated or threatened, or that Plaintiff's **actual** conduct could have created a hostile environment for the student. The student's emails to the Plaintiff support this conclusion. On the other hand, when she was not Plaintiff's student anymore, the Plaintiff talked to her in the hallways of the university **on his way to the classroom**, no more than four (4) times, and she always was accompanied by other students. Consequently, UPRU's Administrative Complaint does not comply with this third requirement. **Fourthly**, the conduct must be **unwelcome**. This factor is crucial in the analysis for obvious reasons; the accuser has to signal to the accused that

[12] UPR- Aguadilla v. José Lorenzo Hernández, 2012 TSPR 57.

17

his/her conduct is unwelcome, and he/she must have perceived it that way. The "unwelcomeness- factor" is so important, that OCR has included it as part of the definition of sexual harassment[13]. It is also included in the definition of sexual harassment in Certification 130 (2014-2015)[14], known as the "Institutional Policy Against Sexual Harassment at the University of Puerto Rico". The fact that the definition of sexual harassment includes that the conduct must be unwelcome indicates that sexual harassment **cannot have occurred** if it could not be shown that the alleged conduct was unwelcome.

45. As we have stated before, the student told the Plaintiff that his emails were welcomed; she always greeted the Plaintiff in the hall with cheer and enthusiasm; most importantly, the content of the emails that the student sent to Plaintiff proves that the student showed no indication to the Plaintiff that any conduct of his was bothering her. Consequently, it was impossible for the Plaintiff to have been aware that the student did not welcome any conduct from him. Therefore, UPRU's Administrative Complaint fails the **fourth** requirement as well. The EEOC advise that:

> "When welcome is at issue, the investigation should determine whether the victim's conduct is consistent, or inconsistent, with the assertion that the sexual conduct is unwelcome".[15]

46. As we have stated before, in the Administrative Complaint there is not any conduct by the Plaintiff of sexual nature. Also, the content of the emails that the student sent to the Plaintiff show that she welcomed Plaintiff's conduct, to the point that **she expressed so in**

---

[13] https://www2.ed.gov/ocr/docs/shguide.html; Gerald v. University of Puerto Rico, United States Court of Appeals, First Circuit, no. 11-2143, January 28, 2013, page. 6; Sexual Harassment and Title VII: Selected Legal Issues, Cristine J. Back and Wilson C. Freeman, Legislative Attorneys, Congressional Research Service 7-5700, www.crs.gov, R4155.
[14] Certification 130, Article IV-E.
[15] https://www.eeoc.gov./laws/guidance/policy-guidance-current-issues-sexual-harassment

those emails. After she was not Plaintiff's student anymore she encouraged the Plaintiff to continue communicating with her. At the hearing, she had to read a couple of the emails that she had sent to the Plaintiff. Sometimes, her voice would break and it was not audible, to the point that she was told to get closer to the microphone[16]. When confronted with the fact that she had told the Plaintiff that his emails were welcomed, she said that she was the kind of person that would not like to make other people feel bad, or something of the sort. One thing is for sure; there is no consistency about the welcome factor if she ever expressed over that. The evidence in record **predominantly** shows that the student welcomed Plaintiff's conduct.

47. The foregoing discussion shows that the legal conclusions in the report the Examining Officer submitted to the ex-rector were wrong according to the standard that has been established by the Office of Civil Rights of the Federal Department of Education (OCR), the United States Equal Employment Opportunity Commission (EEOC), the U.S. Supreme Court[17] and The Supreme Court of Puerto Rico[18]. Consequently, UPRU's Resolution of finding the Plaintiff guilty of sexual harassment to a student, is **not supported by the standard** set out by the authorities mentioned before. Here are some useful quotes from those authorities that further support that UPRU's Administrative Complaint falls short of being one that raised to the level of sexual harassment:

> "In order to establish a violation of Title IX, the harassment must be sufficiently serious to deny or limit a student's ability to participate in or benefit from the education program[19]".

---

[16] Her demeanor was very suspicious.
[17] Davis v. Monroe County Board of Education, 526 U.S. 629,633 (1999); Gebser v. Lago Vista Independent School District, 524 U.S. 274 (1998).
[18] UPR- Aguadilla v. José Lorenzo Hernández, 2012 TSPR 57.
[19] Revised Sexual Harassment Guidance: Harassment of Students by School Employees, others Students and Third Parties. TITLE IX.

"The Office for Civil Rights (OCR) considers the conduct from both a subjective and objective perspective. In evaluating the severity and pervasiveness of the conduct, OCR considers all relevant circumstances[20]"

"Sexual harassment in the educational context is targeted, discriminatory conduct that is so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victim's educational experience that the victim-students are effectively denied equal access to an institution's resources and opportunities[21]".

"In most cases, a hostile environment will exist if there is a pattern or practice of harassment, or if the harassment is **sustained and nontrivial**. On the other hand, **conduct that is not severe will not create a hostile environment**[22]."(*Our Emphasis.*)

"Unless the conduct is **quite severe**, a single incident or isolated incidents of offensive **sexual conduct** or remark's generally do not create an abusive environment[23]". (*Our Emphasis.*)

48. Finally, preponderance of the evidence is the legal standard that was needed in the administrative case against the Plaintiff to find him guilty of sexual harassment to a student. However, the evidence in the record shows that there is no conduct of sexual nature; that the student had lied to the university officials; that the student had lied under oath; that the student technically admitted at the hearing that she had lied to the Plaintiff about not receiving his emails. Naturally, lies do not prove any material issue in any investigation, and

---

[20] Id.
[21] Davis v. Monroe County Board of Education, 526 U.S. 629,633 (1999).
[22] Davis v. Monroe County Board of Education, 526 U.S. 629,633 (1999).
[23] Policy Guidance on Current Issues of Sexual Harassment; https://www.eeoc.gov./policy/docs/currentissues.html

there were a lot of them in this administrative case. The examining officer had enough evidence to have realized that the student was not trustworthy. However, his bias against student-professor acquaintance relationship was too strong that it did not permit him to be objective in his appraisal of the evidence that was presented in the case; in constitutional language, it did not permit him to be impartial. After all, the evidence in record shows that the student had been dishonest. This should have been enough for the examining officer to question about the student's real motives when she complained about the Plaintiff. In her original complaint the student claimed that Plaintiff's alleged acts happened through email only; later she added that the acts happened in the hallways as well.

**Structural Non-Harmless Error**

49. "A fair trial in a fair tribunal is a basic requirement of due process. Fairness, of course, requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness". In re Murchison, 349 U.S. 133 (1955). The United States Supreme Court recognized that a trial before a biased trial judge presents a structural error. See generally Tumey v. Ohio, 273 U.S. 510, 47 S. Ct. 437, 71 L. Ed. 749 (1927). On the other hand, a constitutional error is harmless when it appears "beyond a reasonable doubt that the error ... did not contribute to the verdict obtained." Neder v. United States, 527 U.S. 1 (1999) (quoting Chapman v. California, 386 U.S. 18). The United States Supreme Court has recognized a limited class of fundamental constitutional errors that "defy analysis by 'harmless error' standards.". Errors of this type are so intrinsically harmful as to require automatic reversal (*i. e.,* "affect substantial rights") without regard to their effect on the outcome. Neder v. United States, *supra. (Internal citations omitted.)*

21

50. It follows from the foregoing, that being subjected to a biased administrative process is a constitutional structural error that **is not harmless**, and need not be analyzed by harmless error standards because it affects Plaintiff's fundamental right to due process. These circumstances, standing alone, indicates that the Resolution of Dr. Raquel Vargas Gómez should be **reversed** by this Honorable Court, because in the administrative process at UPRU the Plaintiff participated in an administrative proceeding that included a biased Informal Procedure "investigator", a biased rector, and a biased Examining Officer as was explained previously; consequently, denying the Plaintiff's a basic requirement of due process.

## Closing Remarks

51. UPRU's Administrative Complaint fails all the constituent parts of the analysis established by the OCR, EEOC, The U.S. Supreme Court and The Supreme Court of Puerto Rico to investigate a sexual harassment complaint. Consequently, UPRU's conclusion that the Plaintiff was guilty of sexual harassment to the student Naomi Marrero Fuentes was **unwarranted**. The evidence in the record does not support such a finding when it is analyzed according to the applicable standard. During the administrative proceedings at UPRU related to the Administrative Complaint, the evidence on record supports the following:

- That the student Naomi Marrero Fuentes lied under oath and had lied to the university officials about her apprehensive feelings, and the way she was feeling in the classroom during the time she was Plaintiff's student.

- That the Student Naomi Marrero Fuentes lied to the Plaintiff about not having received his emails. Consequently, she misled the Plaintiff when she encouraged him to send her emails.

- That Mrs. Ana Arce Vélez and Dr. Raquel Vargas Gómez violated Certification 130 during the investigation. In particular, there were violations to Sections, H, I, of Article IX, of Certification 130; violations to Section B-2, Article XI, of Certification 130, and violations Section 35.1.5 of the University of Puerto Rico General Regulations.

- That Mrs. Ana Arce Vélez, Dr. Raquel Vargas Gómez, and Mr. Luis Sevillano Sánchez, were all biased against the Plaintiff; consequently, that the Plaintiff was denied the due process of law, guaranteed by the Fourteenth Amendment of the Constitution of the United States, and Article II, Section 7, of the Constitution of the Commonwealth of Puerto Rico.

- That the evidence on record does not support a finding of sexual harassment of the Plaintiff to the student Naomi Marrero Fuentes when compared to the standard set out by OCR, EEOC, The U.S. Supreme Court, and The Supreme Court of Puerto Rico.

52. It is also clear from the record that Dr. Haddock has been acting in bad faith by failing to recognize the plaintiff's right to have the Appeal decided on the merits, causing the plaintiff to commence this unnecessary legal action.

### **PRAYER FOR RELIEF**

WHEREFORE, and for the foregoing reasons, the Plaintiff, Dr. Luis S. Arana Santiago, respectfully prays for the following:

23

a) That the court **reverse** Dr. Raquel Vargas Gómez's Resolution of November 22, 2016, in which she found the Plaintiff guilty for having violated UPRU's policy on sexual harassment, and for having violated the university policy of acceptable use of the University of Puerto Rico resources of the technology of the information. Consequently, that it was unwarranted having suspended the Plaintiff from his job and salary for a period of six (6) months.

b) That the Court order the defendants to pay the Plaintiff unearned wages during the six-month period that began on **December 23, 2016,** and to expunge from **Plaintiff's record** all the documents related to the Administrative Complaint against the Plaintiff issued by Dr. Raquel Vargas Gómez.

c) Granting such other and further relief as may be just and proper.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 20th of April 2021.

Dr. Luis S. Arana Santiago
P.O. Box 500
Orocovis, P.R. 00720
arana2121@yahoo.com
(787) 624-9583

24